FILED

2005 Jan-03  PM 03:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

THE SIERRA CLUB, et al.,           }
                                   }
        Plaintiffs,                }
                                   }        CIVIL ACTION NO.
v.                                 }        03-AR-2546-M
                                   }
WHITAKER & SONS, LLC, et al.,      }
                                   }
        Defendants.                }
                                   }
                                   }

## MEMORANDUM OPINION

Before the court is the converted summary judgment motion of defendants, Whitaker & Sons, LLC, Greg Whitaker, and Mike Whitaker (hereinafter collectively referred to as "Whitaker").[1] Plaintiffs, the Sierra Club ("Sierra Club"), Willard Jones ("Jones"), and Pearl Ivey ("Ivey"), brought the above-referenced action as a citizen suit under the Clean Water Act, 33 U.S.C. § 1365(a)(1). Plaintiffs appended state law negligence, nuisance, and trespass claims. Whitaker contends that the federal environmental claims (amended complaint counts 1-5) should be dismissed with prejudice based on a prior civil action brought against it by the Alabama Department of Environmental Management ("ADEM") in state court. Whitaker further contends that, having dismissed plaintiffs' federal claims,

---

[1] Defendants initially moved to dismiss on October 6, 2003, and supplemented their motion on March 1, 2004. Plaintiffs amended their complaint on May 26, 2004, and defendants moved to dismiss the amended complaint on July 15, 2004. The court converted defendants' motion to a motion for summary judgment by order entered September 3, 2004. In effect, the converted motion for summary judgment subsumes the motions to dismiss, such that the following opinion and accompanying order disposes of all the said motions.

the court should exercise its discretion under 28 U.S.C. § 1367(c)(3) to dismiss the remaining state law claims without prejudice.  For the reasons that follow, the court will grant Whitaker's motion in part and deny it in part.

### Summary Judgment Facts[2]

Sierra Club is a non-profit membership organization dedicated to environmental preservation and defense.  On behalf of its members it actively supports effective enforcement of environmental laws, including the Federal Water Pollution Control Amendments ("FWPCA") or CWA and the Alabama Water Pollution Control Act ("AWPCA").  Plaintiffs Jones and Ivey are individual residents of DeKalb County, Alabama.

Whitaker owns and operates a centralized animal feeding operation ("CAFO") or hog farm, in DeKalb County, Alabama. Whitaker operates its CAFO under a general permit issued by the ADEM that prohibits the discharge of pollutants into state waters.  Whitaker has previously applied for, but has never received, an individual permit for its hog farm.  Plaintiffs

---

[2]In ruling on Whitaker's motion, the court considers the factual allegations of plaintiffs' complaint, as well as the state court complaint filed by ADEM against Whitaker, the original consent order between Whitaker and ADEM and their proposed state court settlement, and the state court's order adopting the parties' settlement agreement.  This is not the ordinary summary judgment motion where, after months of discovery, the court must determine whether the evidence submitted demonstrates the absence of a genuine issue of material fact under Rule 56(c), F.R.Civ.P.  Rather, because defendants' motion to dismiss was converted to a Rule 56 motion in order to allow consideration of the above-mentioned pleadings and materials, the following statement of facts will assume the allegations of historical fact in plaintiffs' complaint are true, and will proceed to analyze the legal issues raised by defendants in support of their motion.

allege that Whitaker has violated the terms of the general permit, as well as state and federal water pollution control laws and regulations, with regard to its management of waste material produced by the hog farm.

*The ADEM Consent Order*

ADEM apparently agrees with plaintiffs that Whitaker has not run its farm in compliance with state water pollution law, at least not at all times.  In July 2001, ADEM and Whitaker entered into an administrative consent order.  The consent order required Whitaker to pay a fine and to bring various aspects of its CAFO operation into compliance with state law within prescribed time limits.  Specifically, the ADEM consent order was based on the following findings:

1. Land application of waste/wastewater had been conducted in a manner inconsistent with the requirements of ADEM Administrative Code Chapter 335-6-7.
2. Whitaker had not obtained and implemented a Waste Management System Plan ("WMSP")meeting National Resources Conservation Service ("NRCS") technical standards and guidelines.
3. Whitaker failed to submit certification/evaluation by a Qualified Credentialed Professional ("QCP") that its waste storage or treatment facility had been designed and constructed, and could reasonably be operated in accordance with an ADEM approved WMSP.

According to Paragraph B. of the consent order, based on these findings, ADEM and Whitaker agreed as follows:

That, immediately on the effective date of this Consent Order, and continuing each and every day thereafter, the Operators shall comply with the Alabama Water Pollution Control Act and Admin. Code Chapter 335-6-7, except as provided by any compliance schedule contained

3

in this Consent Order.

Finally, the consent order contemplated means by which ADEM could force compliance with its terms.  Among these provisions, Paragraph L evidences the parties' agreement that ADEM can bring an action to compel compliance with the order "in a court of competent jurisdiction...including...the Circuit Court for Montgomery County, Alabama."

*ADEM's Civil Action Against Whitaker in State Court*

Several months later, on March 14, 2002, ADEM wrote to Whitaker to "identify conditions" of the consent order "that have not been resolved."  These unresolved conditions include Whitaker's failure to submit and/or implement a comprehensive WMSP and failure to submit certification from a qualified credentialed professional ("QCP") that its facilities were constructed and could be operated in accordance with an approved WMSP that meets or exceeds the technical standards of the NRCS.  On February 19, 2003, ADEM sent a nearly identical letter to Whitaker, repeating ADEM's threat of "further action."  Conspicuously absent from these letters is any allegation that Whitaker had failed or was failing to comply with the consent order's requirement that Whitaker cease improper land application of wastewater.[3]

---

[3]Whitaker contends that Paragraph B. of the consent order was clearly so broad that it "covered" any improper land application activities.

4

In May 2003, ADEM made good on its threat by filing a complaint against Whitaker in state court in Montgomery County, alleging that Whitaker was operating in violation of the consent order and in violation of regulations promulgated pursuant to the AWPCA.  ADEM sought injunctive relief to enforce the consent order, as well as to obtain civil penalties pursuant to §22-22A-5(18)c of the Alabama Environmental Management Act.

In February 2004, ADEM and Whitaker reached an agreement and submitted a proposed settlement and general release to the state court.  The proposed settlement was designed to "resolve any and all violations or alleged violations of the Alabama Water Pollution Control Act" and ADEM's CAFO rules.  Def. Reply Brief, Ex. A.  The proposed settlement further represented that "ADEM is unaware of any compliance issue not already addressed" in the agreement, but it obligated Whitaker to take "any and all further action" necessary to comply with "all environmental laws and regulations applicable to its operation and facility." The proposal, as approved and ordered by the state court on February 26, 2004, required Whitaker to: (1) pay a civil penalty of $25,000; (2) discontinue use of its waste pond for storing wastewater and close out that pond consistent with NRCS guidelines; (3) prepare and submit to ADEM a comprehensive WMSP; (4) begin construction of an aboveground storage tank system for waste management; (5) submit certification of a registered

5

professional engineer that all aspects of the WMSP have been properly constructed and implemented; and (6) not compost mortality without prior approval of the state veterinarian.  The state court concluded its order by dismissing the action with prejudice.

*The Sierra Club Litigation*

Plaintiffs commenced the instant CWA citizen suit by filing their original complaint on September 16, 2003, after notifying Whitaker, ADEM, and the EPA of their allegations and waiting the requisite sixty days.  *See* 33 U.S.C. § 1365(b)(1)(A).  In addition to their state law claims, plaintiffs allege that Whitaker was continually operating its hog farm in violation of federal clean water laws.  Plaintiffs amended their complaint on May 26, 2004.  The principal allegations underlying the federal CWA claims in this pleading are as follow:

1. Whitaker discharges pollutants to an unnamed tributary of Crow Creek in violation of the state's general permit under the AWPCA and the FWPCA.
2. Whitaker also violates said permit by failing to abide by the CAFO regulations found in the ADEM Admin. Code Rule 335-6-7.  Specifically, Whitaker violates the regulations by:
   a. Spraying wastewater onto a field in such a manner as to allow runoff of wastewater from the field into the unnamed tributary of Crow Creek, and onto the property of adjoining landowner, Jones.
   b. Undertaking or continuing land application of waste or wastewater when significant precipitation was expected within 72 hours.
   c. Undertaking or continuing land application of waste or wastewater when soil is saturated.
   d. Undertaking land application of wastewater by aerial or spray irrigation with 500 feet of the nearest occupied dwelling.

6

     e.   Undertaking land application within 50 feet of surface
         waters of the State.
     f.   Undertaking land application with no vegetation
         actively growing on the site.
     g.   Failure to keep complete records of all land
         applications.
     h.   Failure to implement odor and nuisance pest
         minimization Best Management Practices.
     i.   Failure to manage and dispose of dead animals in
         accordance with NRCS technical standards.
     j.   Failure to implement a WMSP.
     k.   Failure to submit a QCP's certification to ADEM
         regarding the design of its facility.

Plaintiffs organize these allegations into five counts in their

amended complaint, described generally as follow:

**Count 1:** Violation of ADEM general permit by unlawful
discharge of pollutants to waters of the state by spraying
or otherwise discharging wastewater onto a field in such
manner as to allow runoff into an unnamed tributary of Crow
Creek on or about certain specified dates.
**Count 2:** Unlawful land application of waste or wastewater in
violation of various provisions of the ADEM Administrative
Code.
**Count 3:** Failure to implement and maintain approved WMSP.
**Count 4:** Failure to have a QCP certify Whitaker's earthen
storage or treatment facility for liquid waste as being
reasonably operable in accordance with an approved WMSP that
meets technical standards, each day of which is subject to
separate fine for violation of Clean Water Act at $27,500
per day.
**Count 5:** Injunctive Relief.

The complaint also contains the following state law claims:

common law negligence and wantonness (count six), common law

nuisance (count seven), and common law trespass (count eight).[4]

--------

[4]Plaintiffs seek the following relief: a declaration (1) that Whitaker
violated its permit in the manner and on the dates alleged in counts 1-4, (2)
that such violations are illegal, and (3) that defendants are liable for them;
an injunction regarding conduct alleged in counts 1-4; assessment of a $27,500
civil penalty for each violation and each day of continuing violation for
which defendants are found liable; reasonable costs and attorneys' fees;
further appropriate relief; an injunction against Whitaker's trespassing upon

On October 6, 2003, defendants moved to dismiss the complaint pursuant to Rule 12(b)(6), F.R.Civ.P.  On October 23, 2003, plaintiffs moved to stay proceedings on the motion to dismiss, specifically requesting an evidentiary hearing and an opportunity to undertake discovery in order to "identify and present evidence to the court...so that the Sierra Club may establish the factual basis for its allegation of subject matter jurisdiction."  Following an October 31, 2003, telephone conference, the court stayed the action pending completion of the ADEM litigation in Montgomery County Circuit Court.  The court has converted Whitaker's motion to dismiss to a motion for summary judgment, the merits of which it will now address.

### *Analysis*

Whether Whitaker is entitled to summary judgment depends on the legal effect of the ADEM litigation and judgment on plaintiffs' right to bring suit under § 1365 of the CWA. Whitaker contends that: (1) plaintiffs' citizen suit is barred under the CWA because ADEM was/is "diligently prosecuting" a sufficiently similar civil action in state court and that (2) plaintiffs' claims are res judicata as a result of the state court judgment.

*Section 1365(b)(1)(B) Limitation on FWPCA Citizen Suits*

---

plaintiffs' property and from operating and creating a nuisance; plus an award of compensatory and punitive damages.

The court must first determine whether plaintiffs have a right to sue under the CWA.  The answer to this question in turn depends upon two sub-issues: (1) to what extent did the ADEM litigation cover the violations plaintiffs' allege; and (2) to whatever extent it did, was the state's prosecution through ADEM diligent.  As to the first sub-issue, Congress placed the following limitations on the right it gave private citizens to pursue an alleged violator of federal water pollution standards under the CWA:

> (a) Except as provided in subsection (b) of this section and section 1319(g)(6) of this title, any citizen may commence a civil action on his own behalf (1) against any person...who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation...
>
> (b) No action may be commenced--
>   (1) under subsection (a)(1) of this section...
>     (B) **if the...State has commenced and is diligently prosecuting a civil**...action in a court of the United States, or a State **to require compliance with the standard, limitation, or order.**"

33 U.S.C. § 1365 (emphasis supplied).

Whitaker maintains that the scope of the ADEM litigation is at least as broad as plaintiffs' complaint, such that all of plaintiffs' federal claims are barred under § 1365(b)(1)(B). Plaintiffs, on the other hand, point to several allegations in their complaint, in particular their allegations of illegal pollutant discharge, that they say are beyond the scope of ADEM's

state court complaint and/or judgment.

The court agrees with plaintiffs that their complaint alleges violations that are not covered by the ADEM consent order or by the state court pleading and judgment.  As plaintiffs correctly point out, § 1365(b)'s bar on citizen suits only applies insofar as the state is prosecuting an action to require compliance with the **same** standard, limitation or order for which the private attorneys general seek to bring suit.  *See Frilling v. Village of Anna*, 924 F.Supp. 821, 836 (S.D. Ohio 1996)("citizen suits are barred only if they are based on the **very same** standards, limitations, or order for which the State has brought a civil enforcement action")(emphasis in original).  Only to the extent plaintiffs' complaint alleges violations that are within the scope of the ADEM litigation is there any need to address whether ADEM's prosecution was diligent.

The complaints do raise similar allegations at their core.  Not surprisingly, Whitaker argues that the ADEM litigation was every bit as broad as the instant complaint, and in fact goes so far as to say that the ADEM litigation was broader, leaving no stone unturned for the present litigation.  Plaintiffs counter by pointing out that the state court action was to require compliance with the terms of the earlier consent order entered by ADEM, while the instant complaint arises out of violations of effluent standards or limitations themselves.  Thus, according to

10

plaintiffs, the two actions are wholly dissimilar in that any relief in the action for violation of the consent order was necessarily shaped and limited by the terms of that order.

The court rejects plaintiffs' view as an overly technical and formalistic way of determining whether two actions are for the same violation, and it will look to the substance of the allegations in the two actions to determine whether and to what extent they address the **same** violations.  If the consent order and subsequent state court complaint and the plaintiffs' complaint in this action addressed substantially similar violations, there is no reason to thwart Congress' purpose in limiting citizen suits by allowing plaintiffs to re-prosecute such violations in a different forum.

Plaintiffs argue, based on the Eleventh Circuit's holding in *McAbee v. Fort Payne*, that because the administrative consent order could not preclude their lawsuit, the fact that ADEM sued to enforce the order in state court should not elevate the order to preclusive status.  *See* 318 F.2d 1248, 1257 (11th Cir. 2003)(holding that CWA citizen suit not barred based on state administrative enforcement order because Alabama law not sufficiently comparable to federal scheme).  In their brief, plaintiffs put it this way:

> The July 11, 2001 Consent Order was entered under the same statutory scheme as the order in *McAbee*.  Standing alone, it therefore would not be preclusive of this

11

> citizen suit.  The state action was brought by ADEM not
> for the underlying violations of the Act, but for
> violations of the consent order.  An order which is not
> preclusive of a citizen suit should not be elevated to
> a preclusive status by a subsequent state action
> brought solely to enforce the provisions of that order.

While this argument starts from a correct premise based on
*McAbee*, it goes further than that decision warrants or requires.
The court's ultimate holding in *McAbee* – that the plaintiff's
citizen suit was not barred under the CWA – was premised on its
finding that the state and federal enforcement schemes were not
"comparable," as required by the plain language of the limitation
on citizen suits there at issue, 33 U.S.C. § 1319(g).  By
contrast, § 1365(b) makes no mention of the state and federal
enforcement schemes being comparable or identical, such that
*McAbee* does not dictate a finding of preclusion in this case.

The Eleventh Circuit's opinion itself supports this
conclusion.  In describing the policy behind the citizen suit
provision of § 1365, the court stated:

> In the declaration of goals and policy under the CWA,
> Congress expressly states that "[i]t is the policy of
> the Congress to recognize, preserve, and protect **the
> primary responsibility and rights of the States** to
> prevent, reduce, and eliminate pollution...." 33 U.S.C.
> § 1251(b) (emphasis added)...
> Furthermore, in examining the role that Congress
> intended citizen suits to play within the context of
> the CWA as a whole, the Supreme Court has declared that
> "the bar on citizen suits when governmental enforcement
> action is under way suggests that the citizen suit is
> meant to supplement rather than to supplant
> governmental action." *Gwaltney of Smithfield v.
> Chesapeake Bay Found.,* 484 U.S. 49, 60, 108 S.Ct. 376,

12

> 98 L.Ed.2d 306 (1987). The Court instructed that
> citizen suits should not trespass the supplemental role
> envisioned for them with respect to section 505 suits,
> thereby "changing the nature of the citizen's role from
> interstitial to potentially intrusive." *Id.* at 61, 108
> S.Ct. 376. Given that the primary function of the CWA's
> citizen-suit provision is to enable private parties to
> assist in enforcement efforts when federal and state
> authorities appear unwilling to act, we note that a
> rigorous "comparability" standard would contravene
> congressional policy for the CWA.

*Id.* at 1252.

Because the "primary function" of citizen suits is to supplement state action when and where the state actor appears "unwilling to act," this court holds that § 1365(b) only precludes plaintiffs' claims that are based on the same underlying violations as those in the ADEM state court complaint. *See id.*

Applying this standard, counts 3 and 4 of the complaint are based on underlying violations alleged in the ADEM litigation. Plaintiffs' count 3 allegations that Whitaker failed to implement and maintain a qualified WMSP are entirely redundant of claims prosecuted in the ADEM litigation. The same is true of count 4, the alleged failure to have and maintain an adequate facility for liquid waste storage/treatment. Because these allegations are materially similar to allegations in ADEM's state court complaint, there is no genuine issue over the fact that plaintiffs' counts 3 and 4 are for violation of the same "standard, limitation, or order" within the meaning of § 1365(b).

As for plaintiffs' remaining allegations, this analysis yields an opposite conclusion. Whitaker contends that the "broad

language" of the consent order, particularly paragraph B, which requires Whitaker to comply with the AWPCA and ADEM Admin. Code 335-6-7, "encompasses each and every allegation made by Plaintiffs." Def. Reply Brief, p. 6. With regard to the alleged discharge of pollutants violation in counts 1 and 2, the court cannot agree. In its *amicus* brief, ADEM virtually admits that it took no action regarding the plaintiffs' allegations of unlawful pollutant discharge by Whitaker.[5] Without expressly admitting that its action did not "cover" the no discharge pollutant allegations of plaintiffs' complaint, ADEM offered the following insightful comment:

> With respect to Plaintiff's alleged violations of the "no discharge" of pollutants limitation...ADEM cannot verify the reliability of Plaintiff's water quality analysis and, therefore, **would not take enforcement action based upon that data**...ADEM would not...initiate enforcement action against the Whitakers based upon Plaintiff's alleged violations of the 'no discharge' requirement of the CAFO rules.

The court infers from this statement of position that, at least as to counts 1 and 2, the ADEM litigation and settlement do not foreclose plaintiffs' action under § 1365(b). Whether plaintiffs' data that ADEM could not rely on is later proved to be incorrect or unreliable is beside the point. Because ADEM did

---

[5]ADEM submitted an amicus brief in this action in response to the court's July 21, 2004, order requesting that ADEM state its position on the question of whether any of the issues in this case are precluded by the state court order entered in February 2004. Without directly offering its opinion on the question the court posed by the court, ADEM submitted its brief on August 17, 2004, intending to "make known its expectations of the State Court Order" entered in the ADEM litigation.

not pursue the claims this data supports, plaintiffs may proceed with counts 1 and 2 of their citizen suit, not having been afforded the chance to support their allegations through discovery.

Whitaker's argument that the catch-all environmental violations provision in the proposed settlement agreement and consent order covers the violations alleged in counts 1 and 2 is unavailing.  The court assumes that Congress intended the language it chose in enacting § 1365(b)(1)(B) to have meaning, and to hold that a catch-all provision in an earlier order or settlement satisfies the "diligently prosecuting...to require compliance...with *the* standard, limitation, or order" standard it chose would unduly narrow the plain reach of the Act.

*"Diligently Prosecuting"*

Having determined that counts 3 and 4 of the complaint raise allegations that ADEM previously prosecuted in the state court litigation, summary judgment is appropriate as to those counts if there exist no issues of fact to prevent the conclusion that ADEM was "diligently prosecuting" those alleged violations. *See* § 1365(b)(1)(B).  Whitaker argues that there is a presumption that ADEM's prosecution was diligent, and that plaintiffs have failed to create an issue of fact that ADEM's prosecution was anything other than diligent.  Plaintiffs counter that the ADEM litigation suffered from several procedural defects, and that the settlement

15

approved by the state court suffers from several fatal substantive defects, and that the combination of these defects yields the legal conclusion that ADEM's prosecution was not diligent.

First, plaintiffs assert that ADEM's failure to give adequate notice of its proceedings in Montgomery County against Whitaker erodes the public participation and intervention rights that Congress and the State of Alabama thought so important in enforcing water pollution control laws. *See* 33 U.S.C. 1365(b)(1)(B); Ala. Code 1975, § 22-22A-5(18)b. Specifically, plaintiffs complain that their right to intervene was frustrated by the fact that suit was filed, not in DeKalb County, where Whitaker operates its CAFO, but in Montgomery County, per the terms of the consent order entered into between Whitaker and ADEM in 2001. Part of Whitaker's argument that the Sierra Club action should be dismissed is that plaintiffs had an absolute right to intervene in the ADEM litigation and did not exercise that right. Plaintiffs retort that ADEM, through its actions, made it difficult to learn of the suit, effectively nullifying their right and ability to intervene, which, according to plaintiffs is exactly why the court should find that the ADEM litigation was not diligently prosecuted.

Plaintiffs maintain that they tried to discover whether ADEM had commenced litigation against Whitaker, but did not think to

check the public records in Montgomery County, since the Alabama Code provides that an action against the alleged polluter shall be brought in the county where the defendant resides or does business.  § 22-22A-5(18)b.  Further, plaintiffs contacted ADEM to request copies of the agency's file and ADEM appeared to comply by sending copies of numerous documents, but without mentioning its suit against Whitaker.  Last, plaintiffs mailed a 60-day notice to required parties, including ADEM and Whitaker, in June 2003.  In response, ADEM could have – though there is no assertion that it was obligated to – notified plaintiffs that it had already commenced a civil action regarding a large number of plaintiffs' concerns based on that notice letter.  It did not.

In light of this series of events, plaintiffs claim that they did not learn of the action until they were served with Whitaker's motion to dismiss in October 2003, more than 5 months after the beginning of the ADEM litigation.  By these actions, ADEM, according to plaintiffs, effectively cut off its right to intervene in any significant respect, and this failure to give adequate notice to plaintiffs "shows a systemic disregard for the right of the public to be a significant factor" in enforcing the CWA.

Viewing this version of events in the light most favorable to plaintiffs, there is still no genuine issue of fact raised that ADEM's prosecution of Whitaker in state court was anything

other than diligent.  Notably, plaintiffs do not cite any
authority for the proposition that ADEM was obligated to give any
notice other than that which it gave under Alabama law.  The fact
that Alabama law does not provide the same rights to public
notice as the CWA, while it did lead to the court's conclusion in
*McAbee* that the two schemes are not "comparable," does not mean
that ADEM's compliance with the state scheme from which it draws
its authority, is not diligent.  Also, plaintiffs' contention
that in October 2003 they lacked a chance for meaningful
intervention is speculative and legally insignificant.
Plaintiffs cannot be heard to conjecture that the state court, at
that late date, would not have allowed the scope of the pleadings
to be enlarged to cover their additional concerns.

As for substantive defects, plaintiffs contend that the
$25,000 civil penalty assessed by the state court against
Whitaker is woefully inadequate under state law to address the
violations ADEM alleged.  The Alabama Code provides minimum and
maximum fines for violations of consent orders, and for the
violations ADEM alleged this range is $100-$25,000 per violation.
§ 22-22A-5(18)c.  The Code also provides that each day of
continuing violation is a separate violation.  *Id.*  From these
provisions, plaintiffs infer that the amount of the fine assessed
in the Montgomery County Circuit Court action was below the legal
minimum, such that there is at least a genuine issue for trial

18

that ADEM's prosecution was not diligent.

Plaintiffs are correct in their assessment that it is difficult to tell without discovery exactly how the parties derived the amount of the civil penalty to be imposed.[6]  That reality, however, does not create a genuine issue for trial that ADEM's prosecution was not diligent under the CWA.  If plaintiffs could cite authority for the proposition that ADEM cannot settle a case without civil penalties or without civil penalties of a certain amount, the court would be inclined to agree with plaintiffs that its enforcement was not diligent.  Plaintiffs cannot.[7]  On the contrary, a fair reading of the statute, which provides a range for "[a]ny penalty assessed," does not make penalties mandatory, but establishes guidelines for penalties, **if** ADEM assesses and recovers the same.  *See* 22-22A-5(18)c.

Plaintiffs' argument depends on its calculation, based on letters sent to Whitaker by ADEM, of the number of days, and hence the number of separate violations, of the consent order for which Whitaker *could* be assessed penalties.  This calculation, assuming it correctly represents the number of violations ADEM

---

[6]And it would be even more difficult, even with discovery, to discern exactly how the state court arrived at the conclusion that a $25,000 penalty was appropriate.

[7]To the contrary, Whitaker cites *Jarrett v. The Water Works and Sanitary Sewer Bd. of the City of Montgomery*, 2001 U.S. Dist. LEXIS 522 at *16-18 (M.D. Ala. Jan. 16, 2001)(Albritton, J.), as indirect support for the proposition that the $100 mimimum civil penalty does not apply to settlements of civil actions.  *See id.* (recognizing that ADEM prosecution may be deemed diligent even in absence of imposition of a civil penalty).

alleged, does not lead to the conclusion that the $25,000 penalty the parties agreed upon somehow violates the minimum required by the AWPCA.  The AWPCA does not by its express terms require that **any** penalty be assessed for every conceivable separate violation.

Accordingly, the court rejects plaintiffs' argument that the amount of the penalty assessed by the state court in adopting the parties' settlement renders ADEM's prosecution non-diligent.  The facts of the action at bar support this conclusion.  To freely review the amount of the penalty assessed by the state court in this action does not merely involve second-guessing ADEM, it involves looking over the shoulder of the state court that approved the penalty as proper and presumably adequate under Alabama law.  This court declines plaintiffs' invitation to do so.

Another alleged substantive defect plaintiffs claim regarding the ADEM settlement in Montgomery County Circuit Court is that that court dismissed the action with prejudice upon entering its dispositive order, without retaining jurisdiction to see that the requirements of the settlement were fulfilled by Whitaker.  This argument forgets that traditional means of enforcing court orders, such as the threat of being found in contempt of court, would be sufficient to secure Whitaker's compliance.

In sum, plaintiffs contend that this dismissal, combined

20

with the absence of injunctive relief and stipulated penalties
for noncompliance in the state court's order, render the entire
state court proceeding a nullity, or, at least a non-diligent
prosecution.  The state court's lack of a "clear mechanism" for
enforcement, they contend, is the "antithesis of diligent
enforcement" contemplated by Congress in enacting the CWA's
restriction on citizen suits.  Notwithstanding the potential
strategic and practical merit of plaintiffs' qualms with the way
ADEM prosecuted Whitaker in state court, they provide no
substantial evidence that ADEM's prosecution was not diligent
within the meaning of the CWA.

It appears that the purpose of the citizen suit provision is
to aid in diligent prosecution, not to provide a supplemental
mechanism whereby private parties are able to second guess the
efforts of the state agencies entrusted with primary
responsibility for enforcing environmental laws.  Thus, absent
evidence that ADEM's prosecution involved foul play or amounted
to a catastrophic failure to enforce the law, § 1365(b) bars
counts 3 and 4 of plaintiffs' complaint.  Plaintiffs have raised
no allegation of foul play, and have failed to legally support
their implication that ADEM's prosecution was a catastrophic
failure.  Plaintiffs' desire to assess Whitaker a higher penalty
for its alleged transgressions is, perhaps, understandable, but
counts 3 and 4 are barred despite ADEM's failure to exact the

number of pounds of flesh that Sierra Club and the individual plaintiffs would require of Whitaker.

*Res Judicata*

As an alternative ground for disposing of all of plaintiffs' federal claims, Whitaker contends that counts 1 through 5 are *res judicata* based on the judgment entered in the state court in March 2004.  The court need not address all the interesting dynamics of this argument, such as whether ADEM and the plaintiffs in this case are in privity under the doctrine of *parens patriae*.  Even assuming that plaintiffs and Whitaker are privies, plaintiffs' counts 3 and 4 are barred by statute, making Whitaker's *res judicata* argument redundant as to those claims. And, because the court has already concluded that counts 1 and 2 were not covered by any of the allegations at issue in the ADEM litigation, the critical element for application of *res judicata* that the same cause of action be involved in both suits, cannot be satisfied as to those counts.  *See Ray v. Tenn. Valley Authority*, 677 F.2d 818, 821 (11th Cir. 1982).  Therefore, the court holds that res judicata fails as to counts 1 and 2, and expressly declines to decide whether *res judicata* principles would apply to bar counts 3 and 4 in the event said counts were not barred by the operation of § 1365(b).

*Waiver/Collateral Estoppel*

As a last line of defense, Whitaker asserts that because

plaintiffs had a statutory right to intervene in the ADEM litigation in state court and did not do so, this court should find that plaintiffs waived their right to challenge the appropriateness of the order entered by the state court.  Put another way, defendants contend that this court should find plaintiffs collaterally estopped from relitigating issues necessarily decided by the Montgomery County Circuit Court.  The court rejects this argument in both of its formulations.

First, Whitaker admits that it has no authority for the position that failure to exercise a right to intervene constitutes a waiver of the expressly created federal right to bring a citizen suit.  Second, as plaintiffs point out, and as this court has already held, the instant action insofar as it is not precluded by § 1365(b) is not attacking the state court's order at all.  Rather, ADEM's state court action cannot fairly be said to cover the violations plaintiffs allege in counts 1 and 2.


*Injunctive Relief*

To the extent plaintiffs' requests for injunctive relief (count 5) are tied to claims that are precluded by § 1365(b), plaintiffs' request for injunctive relief is due to be dismissed. The converse is also true.  To the extent plaintiffs' claims survive summary judgment, so do their requests for injunctive relief tied to said claims.  Accordingly, the court will dismiss

23

count 5 only insofar as it requests injunctive relief stemming from the violations alleged in counts 3 and 4 of plaintiffs' complaint.

*Individual Plaintiffs' State Law Claims*

Whitaker's argument that this court should exercise its discretion to dismiss plaintiffs' state law claims was premised on the court's first finding that all of plaintiffs' federal claims are due to be dismissed.  Having declined to make this finding, the court will deny Whitaker's motion to dismiss plaintiffs' state law claims.

### *Conclusion*

In accordance with the foregoing opinion and analysis, defendants' motion for summary judgment is due to be GRANTED in part and DENIED in part.  Ordinarily a denial of a motion for summary judgment would preclude a subsequent such motion, but this denial is without prejudice to defendants' right to file another Rule 56 motion after discovery.  A separate and appropriate order will be entered.

DONE this 3rd day of January, 2005.

_____

WILLIAM M. ACKER, JR.

UNITED STATES DISTRICT JUDGE